(No. 35606.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLIFFORD GOLLIDAY, Plaintiff in Error.

*Opinion filed September 29, 1960.*

CHARLES B. EVINS, and HOWARD T. SAVAGE, both of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

William Reddik and Clifford Golliday in Cook County were jointly charged with the sale of narcotic drugs to Alonzo Anderson on March 16, 1959. Both defendants waived trial by jury and were tried jointly by the court who found them both guilty and sentenced each to the Illinois State Penitentiary for a minimum of ten and a maximum of twelve years. Only Golliday is interested in this review.

The sole issue presented for our consideration is the sufficiency of the proof. Therefore, a rather complete evidentiary discussion is appropriate.

The prosecution relied upon the testimony of three police officers of the city of Chicago and Alonzo Anderson, an informer. John Urso, a Chicago police officer, testified that he and John Allegretti, another policeman, contacted the informer and gave him currency in the amount of $50. After having made a record of the serial numbers of each bill, they took Anderson to 63rd and Woodlawn in the city of Chicago where Anderson made a phone call to Reddik. Urso and Allegretti then went to the vicinity of 60th and Kimbark in a truck which they parked on the north side of the street 20 feet from the corner facing westward. There they remained two hours, when the two defendants came westwardly on 60th Street in a Pontiac car. The driver of the car was William Reddik and to his right was seated Golliday who was seen to throw a package which was recovered by the officers. It was a "crunched Herbert Tareyton cigarette package containing a tinfoil package containing white powder." Officer Allegretti immediately made a field test of the powder which proved that it was a derivative of opium. Later it was stipulated that a chemical analysis confirmed this conclusion.

The officers then followed the two defendants to 63rd and Woodlawn and saw them enter a Walgreen drugstore located at the northeast corner of that intersection. Thirty minutes later the defendants were arrested while leaving the drugstore and approaching the Pontiac car. Reddik was searched and found to have the $50 marked currency. The serial numbers appearing on the bills were the same as those recorded by the officers.

The testimony of police officer Robert Lopez revealed that Anderson had made the telephone call in the drugstore at 63rd and Woodlawn and that it ran something like this: "Hi, and what's to it." The reply, "Everything is cool,"

and Anderson said, "I am running a little late, and I have got some people waiting for me, and I want to get an eighth." He heard their reply, "O.K., I'll drop the stuff off at the regular place and I will meet you at Walgreen's about 4:30." Lopez testified further that he saw Reddik and Golliday enter the drugstore later that afternoon and that he saw Anderson hand Reddik some currency.

Anderson testified that he sat between Reddik and defendant at the Walgreen drugstore counter; that he gave the marked currency to Reddik; that he did have a conversation with Golliday wherein he told him that he was having considerable trouble with the "quality of his merchandise," but Golliday insisted that recently he had seen some improvement in the quality because "he had tried it himself." Golliday denied this conversation.

Both defendants testified but their explanation of their conduct and involvement was unconvincing. Reddik's testimony concerning the $50 marked currency is difficult to understand and even more difficult to believe. Defendants' counsel point out several discrepancies in the testimony of Urso and Allegretti. We do not believe that the variations suggested are of such character that the honesty of the officers can be impugned. The trial court in his oral analysis of the proof readily conceded that the informer was doubtlessly testifying because he expected favor from the State's Attorney inasmuch as he was facing two indictments involving narcotic violations. The testimony of an informer thus situated should be closely scrutinized. But, as the court observed, there was the unimpeached testimony of the police officers and the possession of the marked money which presented a sound basis for the guilty finding.

Apparently Golliday was not the merchant whom the informer called to purchase the drug, nor was he the one who received the marked currency. Nevertheless, if the officers are to be believed, Golliday was the one who delivered the merchandise. It is obvious that he aided, abetted

and assisted Reddick in the sale of narcotic drugs to Alonzo Anderson in accordance with a prearranged scheme. The evidence presented at the trial provided convincing proof that the defendant sold narcotic drugs within the terms of the applicable statute. *People* v. *Glass,* 16 Ill.2d 595; *People* v. *Shannon,* 15 Ill.2d 494; *People* v. *Suddeth,* 374 Ill. 132.

*Judgment affirmed.*