People of the State of Illinois, Plaintiff-Appellee, v. John Carter, Defendant-Appellant.

Gen. No. 50,327.

First District, First Division.

April 11, 1966.

Emilie N. Wanderer, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

After a jury trial, defendant, John Carter, was found guilty of the unlawful sale of narcotics. On appeal, defendant's principal contention is that the evidence was insufficient to prove him guilty beyond a reasonable doubt.

The conviction is based on the testimony of an informer and a police officer. The informer was Theodore Hall, an admitted narcotics addict and ex-convict, who had been an informer in "over 120 cases`. . . over a two year period of time."

At approximately 5:00 p. m. on November 23, 1963, Hall went to police headquarters at 1121 South State Street, Chicago, and met Chicago Police Officers McKelvey and Tobin of the Narcotics Bureau. Hall was searched and examined, and all of his money was taken by one of the police officers for safekeeping. In his presence, the officers recorded the serial numbers of ten one-dollar bills. At about 8:00 p. m., the two officers and Hall proceeded to the area of Division and State Streets. Officer McKelvey gave Hall the recorded bills, and Hall entered DeMarco's Restaurant at 9 West Division and took a seat at a lunch counter, where there were four or five other persons seated. The two officers took positions outside the restaurant and kept Hall under surveillance through the window.

After about 20 or 30 minutes, the defendant, John Carter, emerged from the back of the restaurant, and Hall met him in front and they took a cab to Chicago Avenue and Cambridge, where they left the cab. They walked north a short distance, turned west at a corner, and entered defendant's apartment. While in a small entranceway, Hall gave defendant the recorded bills, and defendant went upstairs. Hall saw "an old woman in the kitchen by the sink, and I heard a woman's voice upstairs and John Carter's voice." Defendant returned shortly, and while they were in the entranceway he gave Hall a tin-foil package. They walked back to Chicago Avenue and took a cab back to Division and State, where defendant returned to the restaurant and Hall went over to the officers and handed Officer Tobin the tin-foil package. The officers followed them on both cab trips and saw them while they were walking on Canbridge, but lost sight of them when they turned west at a corner and did not observe them again until they returned on foot and entered the second cab.

The officers field-tested the contents of the tinfoil package and found narcotics. The officers then proceeded

to DeMarco's Restaurant and arrested defendant. They searched defendant, the restaurant and his home and did not find the prerecorded bills or any additional narcotics.

After a guilty verdict was returned and before sentence was imposed, the State showed in aggravation defendant's 1955 and 1959 convictions for unlawful possession of narcotics, and defendant, in accordance with paragraph 22–40, Chapter 38, Illinois Revised Statutes 1963, was then sentenced to the penitentiary for a term of from 10 years to life.

Defendant relies on People v. Bazemore, 25 Ill2d 74, 182 NE2d 649 (1962), and People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959), in support of his contention that corroboration is required when the evidence of sale is the testimony of an informer who is an addict.

In Bazemore, the addict informer returned to the police, who were stationed about a block away, with two tinfoil packages which contained narcotics. After receiving a description of the seller and information as to where the sale had taken place, the police made a search of the area but found no trace of defendant. The informer testified he next saw defendant two months later in the same vicinity and reported to one of the police officers, whom he found seated in a police vehicle a short distance away. Defendant was apprehended at that time. No narcotics were found on his person, nor was any of the inventoried money ever recovered. There, in reversing the conviction, the court said (pp 76, 77):

> "Where, as here, the State's case rests solely upon the credibility of an admitted narcotics addict, a trial court, and in the final analysis this court, must carefully and closely scrutinize the testimony of the witness. . . . Although it does not necessarily follow that his testimony must be disbelieved, . . . the fact that a witness is a narcotics addict has an

important bearing on his credibility. . . . A further circumstance in this case, which goes to the credibility of the witness, is the fact that the informer was not kept under any surveillance by the police as he went about making the controlled purchases of drugs. . . . This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

■ The Bazemore pronouncements, while pertinent, do not require a reversal here. The guidelines to be used here are set forth by this court in People v. Romero, 54 Ill App2d 184, 203 NE2d 635 (1964), at page 188:

"Although the testimony of a narcotic addict is scrutinized with caution, his testimony may be sufficient to sustain a conviction if it is credible under the surrounding circumstances. . . . The test is not whether an addict informer's testimony is uncorroborated, but whether his testimony is credible under the surrounding circumstances."

Defendant contends there was no such continuity in the surveillance of the informer to prove beyond a reasonable doubt that he had not had "an opportunity to have some transaction with a person other than defendant." Defendant argues that in the restaurant, Hall may have transferred to the counterman "the prerecorded funds and obtained the narcotic drug, and then, to divert attention from his source of supply, . . . implicated the defendant," and further, "it was not the responsibility of the defense to explain what had actually happened" at defendant's home "since there was no testimony other than that of the informer that a sale of a narcotic drug

had occurred there." We note here, however, that with the exception of these two periods, the defendant and the informer were together under the constant surveillance of the police from the time they left the restaurant until they returned, when the informer delivered the tinfoil package to the police officers, and defendant was arrested in DeMarco's.

■■■ We agree that the testimony of a narcotics informer should be closely scrutinized, but the test is "whether his testimony is credible under the surrounding circumstances." In the instant case there was an immediate arrest of defendant, after a fairly close surveillance of both the informer and the defendant. The informer had no narcotics when he initially left the police car and did have narcotics when he returned, which he testified he purchased from defendant. Under the surrounding circumstances of this case, we believe the credibility of Hall, an admitted narcotics addict and ex-convict was primarily a question for the jury. In People v. Romero, this court said (p 189):

> "This court will not substitute its judgment on the matter of the credibility of witnesses and the weight to be given their testimony where the trier of fact saw and heard their testimony, unless we can say that the proof was so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt."

As we cannot say that the proof in this case was so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt, we see no reason for disturbing the guilty finding.

■■■ Defendant further contends that the indictment was insufficient in law, and that defendant was prejudiced by the remarks of the State's Attorney, who characterized the defendant as a "dope peddler," and that the "patent prejudice of the trial judge induced the

453

verdict of the jury." We find these contentions are without merit. As to the sufficiency of the indictment, we note that it meets the requirements set forth in the recent Supreme Court Case of People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965). As to the conduct of the State's Attorney and trial judge, we have examined the record and find no prejudicial error. See People v. Lopez, 10 Ill2d 237, 240, 139 NE2d 724 (1957).

We conclude the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt, and that he received a fair trial. The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.