**The People of the State of Illinois, Plaintiff-Appellee, v. Clinton L. Johnson, Defendant-Appellant.**

Gen. No. 51,789.

First District, First Division.

October 30, 1967.

C. August Taddeo, of Melrose Park, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Edward J. Downs, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Clinton L. Johnson, was indicted and charged with the unlawful sale of narcotic drugs in Count

I, the unlawful possession of narcotic drugs in Count II, and the unlawful dispensation of narcotic drugs in Count III of a three-count indictment. After a waiver of jury by the defendant, the trial judge found him guilty of unlawful possession of narcotic drugs as charged in Count II, and sentenced him to serve a term of not less than five and not more than eight years in the State Penitentiary. The defendant contends, on appeal, that the finding of guilty and the judgment entered thereon should be reversed because the verdict of the trial judge was based on insufficient evidence. He contends that the testimony elicited at trial was insufficient to convict because it was based upon incompetent, contradictory testimony.

William Malek, an informer, and two police officers, Harrison Harvick and Frank Gill who were assigned to the narcotics division, testified to the events that resulted in defendant's conviction. The evidence on behalf of the State shows that at 8:30 p. m. on August 3, 1960, Malek was thoroughly searched to see if he had any money or contraband in his possession. In the presence of all three witnesses the serial numbers of a five-dollar bill and five one-dollar bills were recorded. The bills were dusted with powder and given to Malek. According to Officer Harvick when he arrived near a gas station at 13th and Blue Island Avenue in an unmarked police car, Malek was already parked next to the station. It was about 9:45 p. m. when Officer Harvick arrived on the scene and he observed that the defendant and Malek were talking intermittently. Harvick was parked about a block and a half from where Malek was parked. The witness observed that after two or three conversations, the defendant who was working as an employee in the gas station, got into his automobile, returning in fifteen or twenty minutes. Officer Harvick further testified that when the defendant returned he again "joined the company" of Malek. At this time Harvick said he

got a signal from Officer Gill that he was "moving in." Harvick advanced on the scene, took the contraband from Malek, and arrested the defendant. The officer testified that the defendant's person was then searched and two of the previously recorded one dollar bills were found on his person. Harvick did not recall whether or not the hands of the defendant were tested to ascertain whether or not they had handled the chemically dusted money that had been given to Malek. The package that Officer Harvick took from the defendant was found to contain marijuana.

Officer Gill testified that he arrived in the vicinity of the gas station before the arrival of Malek, and parked approximately twenty feet north of the station. He possessed a "full vantage point of the station and the people in it. . . ." Gill testified that when Malek arrived on the scene, ten to twenty minutes after Gill himself had arrived, the defendant approached Malek's car and began to engage Malek in conversation. A second conversation occurred between the two approximately a half hour later, at the conclusion of which the defendant got into his car and drove off. The defendant returned in about fifteen or twenty minutes and Gill testified that he saw him hand something to Malek. Gill further testified that Officer Harvick was the first officer to reach the defendant, and that Harvick immediately informed him that he "had the stuff." Gill said that he could not recall whether or not the defendant's hands were tested to see if they had handled the chemically treated money. On cross-examination, Gill stated that he had witnessed Malek go to the washroom in the gas station at one point, but that he had not seen Malek either ask for change or make any phone calls.

The informer, William Malek, testified that when he first arrived at the gas station around 9:30 p. m., the defendant approached his car, at which point Malek asked the defendant if he could get some marijuana. At

393

approximately 10:30 p. m. the defendant returned to Malek's car and Malek gave him the money previously given to him by the police officers. The evidence shows that the conversation between Malek and the defendant could not have been overheard by the police officers. Malek further testified that the defendant drove off in his car, returning in twenty minutes. The defendant handed Malek a package and began to walk back to his car. Malek testified that at this time the officers arrived on the scene and arrested the defendant; at the same time Officer Harvick took the package from Malek. On cross-examination, Malek testified that he had smoked marijuana for about six months prior to April 7, 1960. He had been arrested on that date, and a resulting narcotics charge was pending against him. Since his arrest Malek admitted that he had been working with the police in attempts to purchase narcotics.

Testifying on his own behalf the defendant stated that he had known Malek for about a year. He testified that on the night in question Malek had pulled up next to the station where he was employed at around 9:30 p. m. The defendant further testified that Malek had initiated the conversation by getting out of his car and approaching the defendant. Their conversation did not pertain to a possible sale of narcotics. The witness stated that the defendant twice asked for change to make telephone calls from inside the station. He further testified that at around 10:45 he had finished his work at the station for the evening and left in his car to buy a "couple of quarts of beer." When he returned to the station with the beer a police officer immediately pulled up behind him, asked him "where is the pistol," and when he didn't produce the weapon the officer began to severely beat him about the face. The defendant further testified, in his own behalf, that he had not made any sale of marijuana to Malek on the night of his arrest. He also testified that

on the night of his arrest Officer Gill had tested his hands to see if they had handled the chemically treated money, and that the results of the test were negative. Other defense witnesses also testified that the police had severely beaten the defendant, and that the defendant had suffered serious physical harm at the hands of the police.

 Defendant contends that "Malek's testimony is scarcely believable in view of his current pending indictment for the sale of narcotics." The credibility of a narcotics addict is for the trier of the facts to determine, although drug addiction must be considered in the determination of the addict's veracity as a witness. People v. Larry, 30 Ill2d 533, 198 NE2d 334. The informer's testimony should be closely scrutinized. People v. Golliday, 20 Ill2d 29, 169 NE2d 263. The fact that the informer in the instant case had been arrested for a narcotics offense and whether his testimony is reliable was also primarily a matter of fact for the trial court to consider in determining the weight of his testimony. The testimony of a narcotics addict may be sufficient evidence to sustain a conviction, even though the accused contradicts the addict's testimony. People v. Romero, 54 Ill App2d 184, 203 NE2d 635; People v. Carter, 69 Ill App 2d 448, 217 NE2d 413.

██ ██ The defendant asserts that Malek's testimony was directly contradicted by the defendant's own testimony that Malek left his car several times to ask for change and to make phone calls. We must note that only the defendant did so testify and it is contradicted by the testimony of the two police officers. The defendant also asserts that the evidence showed the absence of some of the marked money from the defendant's possession at the time of the arrest; he also argues that the testimony of the two police officers was conflicting as to the administering of chemical tests to ascertain whether or not

the defendant had handled the money given to the informer. We need not consider these contentions in detail. Conflicts and inconsistencies in the evidence are to be resolved by the trier of the facts while weighing the evidence and determining the credibility of the witnesses. We will not substitute our judgment for that of the trier of the facts. People v. Scott, 34 Ill2d 41, 213 NE2d 521. Also, these contentions of defendant relate to the illegal sale count of the indictment, and as the defendant was convicted only of illegal possession of narcotics, we need not adjudge the sufficiency of evidence pertaining to the sale. Evidence as to injuries sustained by the defendant at the time of the arrest was conflicting and was also for the trial court to resolve.

█ The evidence introduced at trial was sufficient as a matter of law to sustain the defendant's conviction of possession of narcotics. The issue of the informer's credibility is not determinative here because his testimony was substantially corroborated by the testimony of the two police officers. See People v. Golliday, 20 Ill2d 29, 169 NE2d 263. The officers from two vantage points had Malek under constant surveillance. Officer Gill testified that he saw the defendant hand Malek a package; the package was found to contain marijuana.

For the reasons given the judgment of the Criminal Court Division of the Circuit Court is therefore affirmed.

Affirmed.

MURPHY, P. J. and ADESKO, J., concur.