**The People of the State of Illinois, Plaintiff-Appellee, v. Jack Luckey, Defendant-Appellant.**

**Gen. No. 51,082.**

First District, Fourth Division.

December 21, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Eldridge Hersey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant, Jack Luckey, was tried by a jury, found guilty of the sale of narcotics and sentenced to life imprisonment. He appeals contending: (1) That he was not proven guilty beyond a reasonable doubt; (2) that the prosecution prejudiced his case by introducing evidence of his prior criminal activities; (3) that a mandatory life sentence under Illinois Revised Statutes, 1965, chapter 38, section 22–40, was a denial of the equal protection of the laws; and (4) that such a sentence was cruel and unusual punishment.

### Evidence

The People produced evidence that on March 15, 1961, an addict-informer, John Genarella, told police officers Hector Hernandez and Daniel Trylovich that he could make a purchase of narcotics from the defendant. Genarella called the defendant and arranged to meet him at Vic West's restaurant. The informer was stripped and

searched for narcotics and given $25 in marked money. He was driven to within a block of the restaurant, got out of the unmarked police car and proceeded to the front of the restaurant where he met defendant. Officer Hernandez got out of the car at the same place and followed ten to fifteen feet behind Genarella. Genarella and defendant talked outside the restaurant for a minute or two and then went in. Officer Hernandez passed them while they were talking at the entrance and preceded them into the restaurant. Officer Trylovich had parked the police car in an alley across the street of the restaurant from which he could view Genarella and defendant at the entrance. Inside the restaurant Hernandez sat ten to fifteen feet from defendant's table, facing the informer and facing defendant's back. After a few minutes defendant got up and went into the men's room. Genarella walked over to Hernandez and gave him three tinfoil packages containing narcotics. Defendant was then arrested in the men's room with the marked money. Officer Hernandez testified that he had seen the informer pass Luckey the money under the table and saw their hands meet over the table but did not actually see the passing of the tinfoil packages. Genarella testified that the narcotics were passed at the table.

Defendant testified that he did not sell Genarella narcotics. He stated that Genarella had asked him to meet him at the restaurant in order to impress someone from whom Genarella was to buy narcotics and that Genarella gave him the money on the understanding that he would use it to show the supplier that Genarella's friends had money to purchase narcotics from him.

Defendant's girl friend, Bessie Campbell, testified that Genarella admitted to her that he "framed" Luckey. The Reverend Samuel Archibald testified that he heard a conversation between Genarella and Mrs. Campbell in which the informer did not deny Mrs. Campbell's accusation that he "framed" the defendant.

## Opinion

■ Defendant contends that his guilt was not proved beyond a reasonable doubt. He argues that under the rule enunciated in People v. Bazemore, 25 Ill2d 74, 182 NE2d 649, the uncorroborated testimony of an addict-informer was not sufficient to convict. However, the thorough police surveillance in the instant case corroborates the informer's testimony and the evidence is sufficient to support the jury's verdict. People v. Johnson, 75 Ill App2d 42, 221 NE2d 59; People v. Johnson, 87 Ill App2d 390, 231 NE2d 647.

■ Defendant also attacks the informer's credibility on the basis of telephone calls to Mrs. Campbell, one of which was overheard by The Reverend Samuel Archibald, in which defendant allegedly admitted that he "framed" the defendant. Mrs. Campbell's testimony includes a conversation with defendant in which he had stated that the informer had "set him up." There is no indication in the record that the use of the word "framed" meant anything more than that the informer provided the occasion for a sale of narcotics. In addition to arguing that the informer was not credible, defendant suggests that the overall evidence was not sufficient in that the officer did not see the narcotics delivered to defendant. The evidence disclosed that the informer was thoroughly searched prior to meeting defendant, that there was strict and continuous surveillance by police officers, and that immediately after passing the money the informer delivered the narcotics to the police. It was within the jury's province to disbelieve defendant's denial of delivery and his explanation of the transaction and we cannot say that the proof was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. People v. Romero, 54 Ill App2d 184, 189, 203 NE2d 635.

■■ Defendant's second contention is that the informer's testimony of prior criminal activity prevented

328

his having a fair trial. On direct examination of the informer the following transpired:

"Q: How long had you known him [the defendant]?
"A: Well, I believe some time ago, we were in the House of Correction together, the County Jail together. We spoke about this—
"Q: The only question before you Mr. Genarella, is how long before that day had you known him?
"A: About three or four weeks."

There was no objection to this testimony. Later on cross-examination the informer stated:

"I probably had seen him [Luckey] six, seven days a week, because I was buying stuff off of him pretty regularly."

No motion was made by defendant to strike this testimony. "The general rule is that the admission of evidence concerning a different substantive offense, in support of the crime charged, is sufficiently prejudicial to constitute reversible error." People v. Baxter, 74 Ill App2d 437, 445, 221 NE2d 16. However, the language of People v. Henry, 3 Ill2d 609, 122 NE2d 159, at 614, is peculiarly appropriate to the instant case:

". . . the State is not responsible for questions asked by defense counsel or answers to those questions by the State's witnesses. . . . Nor is the court obligated to exclude improper evidence where the defendant makes no objection, does not move to exclude it or does not disclaim the answers. . . ." [Cases omitted.]

Furthermore, defendant himself testified, on direct, that he first met Genarella when "[w]e was doing time in the House of Correction at 2800 South California, here in Chicago." Defendant also stated that he pur-

329

chased cocaine from Genarella for his own personal use the evening before he was arrested. He also testified that he was arrested five times by an officer who was present at his incarceration. Finally defendant testified on cross-examination that Genarella asked him to "get rid of it [narcotics] for him to my associates. In other words, to sell it. That's what I intended to do." It is apparent that the defense felt that it was worth admitting a pattern of narcotics crimes to establish that Genarella himself was guilty of misbehavior and thus not to be believed. In view of his own testimony as to his criminal behavior, it is difficult to see the prejudice that resulted from the testimony he now complains of.

 Defendant's third contention is that a mandatory life sentence under this statute is a denial of the equal protection of the laws guaranteed by the United States Constitution. Illinois Revised Statutes, 1965, chapter 38, section 22-40, reads in relevant part:

> "Whoever violates this Act by traffic in, selling, prescribing, administering, or dispensing any narcotic drugs, shall be imprisoned in the penitentiary for any term from 10 years to life, and for any subsequent offense shall be imprisoned in the penitentiary for life. Any offense under this Act is a subsequent offense if the violator has been previously convicted of an offense under this Act or any previous Act of this State relating to narcotic drugs or of a felony under any law of the United States or of the District of Columbia relating to narcotic drugs. No probation or suspension of sentence shall be granted to any violator convicted under this paragraph."

Defendant argues, with some force, that since this statute does not make one who has previously committed violations under the laws of a sister state a subsequent offender, it is unconstitutional. He suggests that the

distinction between prior offenses under the laws of Illinois and of the United States or the District of Columbia are not sufficiently different from prior offenses under the laws of a sister state to justify the difference in treatment. We believe this argument is answered in People v. Shamery, 415 Ill 177, 112 NE2d 466. There the Supreme Court construed a slightly different forerunner * of this provision to mean that prior offenses included misdemeanors in Illinois but only felonies elsewhere. Mr. Justice Maxwell dissented stating that such a distinction offended against the equal protection of the laws. In People v. Tillman, 1 Ill2d 525, 116 NE2d 344, the court adhered to its view in Shamery. These cases can be fairly read as standing for the proposition that the State may validly distinguish between those in-state crimes and those out-of-state crimes which it wishes to consider prior offenses. If the State may validly disregard prior out-of-state misdemeanors while considering in-state misdemeanors it then follows that it may validly disregard completely the crimes committed in a sister state.

██ Finally, defendant contends that basing a mandatory life sentence on his conviction in the instant case after a prior conviction of possession of narcotics is cruel and unusual punishment within the meaning of Robinson v. California, 370 US 660. There the court held

---

* Section 23 of the Uniform Narcotic Drug Act (Ill Rev Stats 1951, c 38, par 192.23) provided in relevant part:

> Whoever violates this Act by possession, having under his control, manufacturing or compounding any narcotic drug shall be fined for the first offense not more than $5000, or be imprisoned for a period of not less than one year nor more than five years, or both. For any subsequent offense the violator shall be imprisoned in the penitentiary for any term from two years to life. . . . Any offense under this Act shall be deemed a subsequent offense if the violator shall have been previously convicted of a felony under any law of the United States of America, or of any State or Territory or of the District of Columbia relating to narcotic drugs.

that it was unconstitutional to punish one for having the status of addict rather than for committing voluntary acts. Possession of narcotics is an act and not a status or condition and its punishment is not unconstitutional. People v. Nettles, 34 Ill2d 52, 213 NE2d 536.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.