**People of the State of Illinois, Plaintiff-Appellee, v. William Werhollick, Defendant-Appellant.**

Gen. No. 52,445.

First District, Second Division.

October 22, 1968.

Block, Levy & Becker, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Defendant, William Werhollick, was tried before a jury and convicted for the offenses of unlawful possession and sale of a narcotic drug, i. e., marijuana. He was sentenced by the court to the penitentiary for a term of from not less than ten (10) nor more than ten (10) years and one (1) day as to the sale, and to a term of from not less than five (5) nor more than ten (10) years for possession, both sentences to run concurrently. He appeals.

The facts of the case involved the controlled purchase of narcotic drugs from defendant through one Joseph Bodnar, a police informer, during the late evening hours of September 7, 1966. Testifying as the principal witnesses in behalf of the State were the informer as well as Police Detectives Stiglich, Reynolds and Buffo, all of whom had been in proximity to the scene of the alleged offenses and whose accounts at trial were corroborative in all material respects. The contentions asserted by defendant on this

appeal focus upon the questionable credibility of the police informer's testimony and the trial judge's rulings on certain objections with respect thereto. No challenge, however, is otherwise directed by defendant to the sufficiency of the evidence to support his convictions.

It is defendant's theory of the case (1) that the trial court erred in unduly restricting his attempts to impeach the credibility of the police informer through testimony designed to disclose that the informer had, in fact, received promises of reward concerning certain criminal charges pending against him in exchange for his testimony at trial, and (2) that the court similarly erred in refusing to give Defendant's Instruction No. 13 pertaining to the credibility of the informer's testimony.

There appears to be no dispute in the evidence that the informer had been initially searched by the police and supplied with a quantity of prerecorded currency with which to make the eventual purchase. Bodnar had been thereafter accompanied by Detectives Stiglich, Reynolds and Buffo to the vicinity of 108th Street and Michigan Avenue in the City of Chicago where a meeting with defendant had been previously arranged. The informer's contact with the eventual purchase of the drugs from defendant subsequently took place in an alley immediately adjacent and to the rear of a well-illuminated parking lot under the visual surveillance of Stiglich and Reynolds. Nearby streetlights were said to afford even further illumination. Both Stiglich and Reynolds testified at trial to having observed the entire transaction under these favorable conditions from close and unobstructed vantage-points.

As defendant subsequently exited from the alley, he was immediately arrested by Detective Buffo on a prearranged whistle from his companions signalling that a "buy" had been made. Stiglich's search of defendant's person revealed the latter to be in possession of the

marked and inventoried currency. Both the police field test at the scene as well as the subsequent crime laboratory analysis yielded positive evidence that the contents of the package possessed and sold by defendant to Bodnar were that of marijuana.

As to the questions raised by this appeal, it appears that during the defense cross-examination of Joseph Bodnar, the witness had admitted to his former use of narcotics and prior history of criminal conduct. It was elicited from Bodnar that there were, at that particular moment, three separate burglary indictments pending against him for which he had been admitted to bail on his own recognizance pursuant to court proceedings conducted one month prior to the date on which he had agreed to assist the police in the controlled transaction at bar. There were indications that one or more other persons jointly indicted with Bodnar for these burglaries had since been convicted and sentenced to prison. In addition, the informer acknowledged somewhat candidly that he was involved in 16 other burglaries for which no indictments had yet been returned against him. Bodnar, however, denied in response to specific inquiry that he had received promises of leniency or immunity from the prosecution with respect to any of these alleged criminal offenses.

In an effort to further impeach the witness, the defense, as part of its case in chief, called Thomas P. Cawley, an Assistant Public Defender who had admittedly represented Bodnar during the preliminary hearings in conjunction with the three aforementioned indictments. Cawley testified that he had certain conversations with both his client and the State's Attorney with regard to the charges under indictment, but refused to divulge any further information because of the confidential relationship he bore to Bodnar. In response to objection, the court conducted a hearing out of the presence of the jury to determine whether the information sought to be elicited from Cawley was, in fact, barred from disclosure as an attorney-client

privileged communication and whether the client wanted to claim it. Bodnar was questioned and expressed his election to invoke the privilege. Returning to open court, the trial judge ruled explicitly in favor of the privilege, and the witness was dismissed.

Thereafter, during the conference on instructions, the court refused to tender to the jury Defendant's Instruction No. 13 relating to the credibility of the informer's testimony. That instruction recited:

> "The jury are instructed that they shall act upon the testimony of Joseph Bodnar with great care and caution; and the jury ought not to convict upon such testimony unless after a careful examination of all the evidence they are satisfied beyond a reasonable doubt of the truth of such testimony and that they can safely rely on it."

It is from within the context of the foregoing circumstances that defendant pursues this appeal.

The errors assigned by defendant must, by their very nature, rely upon the tenuous assumption that the jury's determination as to the credibility of the informer bore a direct and pivotal relationship to their eventual finding of guilt. Defendant's theory on appeal, howsoever attempted to be supported by authority, accordingly is an argument advanced out of perspective in that it fails to successfully test the significance of the testimony assailed as against the balance of the evidence adduced at trial tending to establish his guilt beyond a reasonable doubt.

 We agree with defendant that an accused is afforded a broad degree of latitude to demonstrate, by cross-examination, the bias, interests or motives of a particular witness testifying against him. This basic tenet has been held to extend, primarily where an accomplice testifies, to matters concerning promises of leniency or grants of immunity with respect to the witness' past criminal activity

bartered in exchange for his testimony at trial. People v. Mason, 28 Ill2d 396, 192 NE2d 835 (1963) ; People v. Maggio, 324 Ill 516, 155 NE 373 (1927). We nonetheless find in retrospect from a perusal of the lower court proceedings that the restriction placed upon the mode of impeachment at issue here in no manner resulted in prejudice to the accused, and to this extent his cited authorities are factually inapplicable.

While in his case of People v. Nash, 36 Ill2d 275, 222 NE2d 473 (1966), this somewhat novel attempt at impeachment was similarly employed, we note that there the propriety of the procedure was neither at issue in the case nor was it afforded express judicial sanction. In Nash moreover, no privilege had been invoked by the accomplice-witness nor had timely objection been made to his attorney's testimony concerning the promise of leniency offered his client. Defendant further alludes to the case of Napue v. Illinois, 360 US 264 (1959), for the proposition that due process is violated when the prosecution knowingly allows perjured testimony as to the nonexistence of such promises to proceed unabated before the jury. Suffice to say however that nothing affirmatively appears in the present case, save the innuendoes interjected by defendant, to persuade this court that the informer's statement was false or, even if it were so, that such an untruth was known or imputable to the prosecution.

Endeavoring to show wherein the rule of attorney-client privilege was erroneously applied to the information sought to be elicited from Cawley, defendant, by hypothesis, points to the certain presence and/or involvement of a third party (presumably the State's Attorney who extended the offer of benefit) to an otherwise protected attorney-client communication regarding this matter. Hence he submits, the removal of the shroud of confidence surrounding that conversation. We however disagree.

358

The reasoning advanced calls into question three possibilities were we to assume for the moment that such a promise had been made. First, that an offer was extended directly to Bodnar by the State. Second, that an offer was extended to Bodnar in the presence of his attorney. Third, that an offer was extended by the State to the attorney and was subsequently related by him to Bodnar. We need obviously be concerned here only with the latter two circumstances involving the attorney. While in principle defendant's logic is sound, he cannot legitimately divorce the question of the presence of a third party to the offer from the equally certain conversation between attorney and client responding to it. We feel that to compel disclosure of the former would be tantamount to an infringement upon the sanctity of the relationship through which the client would seek professional advice. Balanced against defendant's right to further probe the credibility of the informer, we think the trial judge exercised sound discretion by insulating the attorney-client relationship under the facts of this case.

Here, the record discloses that the court took occasion to conduct a thorough hearing into the merits of defendant's contention. As the issue pertains to the credibility and weight to be afforded the informer's testimony, it is manifest from the record that the jury had been fully apprised of Bodnar's criminal proclivities and had been made cognizant of the circumstances antedating his professed gratuitous cooperation with the police. Furthermore, we cannot lightly dismiss from consideration the fact that there existed other unpursued avenues open to defendant by which the desired information could have been adduced.

In any event however, the assailed testimony of the informer was substantially corroborated by the testimony of three police detectives, two of whom had occasion to personally observe the entire transaction under physical

circumstances conducive to a positive and trustworthy account. Hence, we cannot envision wherein defendant was prejudiced by the limitation placed upon the interrogation of the informer's attorney for, from all that appears, the jury's belief or disbelief in the informer's testimony was not a determinative factor in their finding of guilt. People v. Chandler, 89 Ill App2d 123, 233 NE2d 84 (1967) ; People v. Johnson, 87 Ill App2d 390, 231 NE2d 647 (1967).

■■ We are drawn to the further conclusion that this same observation holds equally true in answer to the trial court's alleged erroneous refusal to give defendant's Instruction No. 13. Here, while only technically an accomplice to the offenses, we do not dispute the proposition that the testimony of an informer of admitted disrepute is to be viewed with the utmost caution and circumspection. Yet, the weight to be afforded such testimony essentially remains a question of fact for the jury. So long as the jury is given and deliberates under instructions which properly guideline the appropriate considerations affecting credibility, we think their determination should remain unbridled by any legal rule or direction requiring a comparison with other witnesses. People v. Newbold, 260 Ill 196, 103 NE 69 (1913). Here, State's Instructions Nos. 9, 13 and 18 adequately served that purpose, admonishing the jury to consider among other factors affecting credibility:

"... all the circumstances under which any witness has testified, ... his interest, if any, in the outcome of the case, [and] the relations which he bears to the State. ..."

■■ It has been moreover established that an instruction is objectionable and properly refused if, by particular emphasis or repetition, it singles out a lone witness endeavoring to call undue prominence to his credibility and the spirit with which his testimony should be

360

received. People v. Robinson, 14 Ill2d 325, 153 NE2d 65 (1958); People v. Sledge, 71 Ill App2d 285, 218 NE2d 845 (1966). Again, particularly in light of the corroboration for the informer's account, we can find no prejudicial error in the court's refusal to give this instruction.

For the above reasons, the judgments are affirmed.

Judgments affirmed.

BURKE, P. J. and McNAMARA, J., concur.