2021 IL App (1st) 181817

FIRST DISTRICT,
FIRST DIVISION
May 3, 2021

No. 1-18-1817

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11 CR 18625 12 CR 13785 |
| JUAN VILLAREAL, | ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Angela Petrone, Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Justice Pierce concurred in the judgment and opinion.
Presiding Justice Walker dissented, with opinion.

**OPINION**

¶ 1     In November 2011, defendant Juan Villareal (defendant) was charged in case No. 11-CR-18625 with a number of offenses, including unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8 (West 2014)). While released on bond in this case, defendant was charged in case No. 12-CR-13785 with the offense of aggravated discharge of a firearm (*id.* § 24-1.2). On April 21, 2014, defendant entered pleas of guilty in both cases to the offenses of unlawful possession of a firearm by a street gang member and aggravated discharge of a weapon. Pursuant to an agreement between the parties, defendant was sentenced to consecutive terms of 4 years' imprisonment for unlawful possession of a firearm by a streetgang member in case No. 11 CR 18625 and 8 years' imprisonment for aggravated discharge of a firearm in case No. 12 CR 13785.

¶ 2        On April 9, 2018, defendant filed a petition for postconviction relief, which the trial court dismissed on June 29, 2018, as being "frivolous and patently without merit." On appeal, defendant alleges that the unlawful possession of a firearm statute is unconstitutional because it "impermissibly criminalizes a defendant's status in violation of the Eighth Amendment."[1]

¶ 3                                 BACKGROUND

¶ 4        On October 10, 2011, police stopped defendant in his vehicle after receiving complaints that the vehicle was involved in a neighborhood shooting. Defendant did not have a driver's license and upon searching his vehicle, police recovered a fully loaded handgun. At the time of the offense, defendant did not have a firearm owner identification (FOID) card and was a member of the Satan Disciples street gang.

¶ 5        On March 5, 2012, defendant and codefendant, Oscar Montes, were driving near West 25th Street in Chicago to locate and shoot a member of the Latin Kings. As they were driving, defendant shot a gun out of the window at Forylan Garcia.[2] Montes crashed the vehicle as they attempted to flee from the police. Defendant admitted to throwing a gun out of the window, which was later recovered.

¶ 6        Defendant was charged with unlawful possession of a firearm by a street gang member and aggravated discharge of a firearm. He pled guilty to both offenses and, pursuant to an agreement reached between the parties, was sentenced to a total of 12 years of imprisonment.

---

[1]Defendant also raised a substantive due process challenge, for the first time, in his supplemental brief.

[2]The record on appeal reflects that during Montes's plea hearing, as part of the factual basis for the plea, the parties stipulated that defendant exited the vehicle with a handgun, fired multiple times at the victim, and got back into the vehicle. All other relevant facts as stipulated are consistent in both defendant and Montes's plea hearings.

¶ 7 On April 9, 2018, defendant filed a *pro se* postconviction petition, which was dismissed by the trial court as "frivolous and patently without merit." On appeal, defendant challenged the constitutionality of the unlawful possession of a firearm by a street gang member statute on eighth amendment grounds.

¶ 8 On May 29, 2020, we requested that the parties submit supplemental briefing on the applicability of two cases[3] from other jurisdictions. Oral argument was held on November 18, 2020, and on November 23, 2020, defendant filed a motion to cite additional authority seeking leave to cite *People v. Hobson*, 2014 IL App (1st) 110585, "for the proposition that a substantive due process challenge is properly before this Court."

¶ 9 ANALYSIS

¶ 10 Defendant's Eighth Amendment Challenge

¶ 11 Defendant alleges that section 24-1.8 is facially unconstitutional because it enhances criminal liability based on an individual's status as a gang member, in violation of the eighth amendment prohibition against cruel and unusual punishment. U.S. Const., amend. VIII. While defendant did not attack the constitutionality of section 24-1.8 in his *pro se* postconviction petition, we recognize that a party may facially attack a statute's constitutionality on appeal even if the party did not raise the issue in the trial court. *People v. Thompson*, 2015 IL 118151, ¶ 32; *People v. Davis*, 2014 IL 115595, ¶ 26.

¶ 12 "All statutes are presumed to be constitutional" and "[t]he party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation." *People v. Funches*, 212 Ill. 2d 334, 339-40 (2004). A

---

[3] We asked that the parties address the applicability of *State v. Bonds*, 502 S.W.3d 118 (Tenn. Crim. App. 2016), and *State v. O.C.*, 748 So. 2d 945 (Fla. 1999) to the case at hand.

court must construe a statute to uphold its constitutionality if reasonably possible. *Id.* A facial attack to a statute is the most difficult to achieve, as the challenger must show that there is no set of circumstances under which the statute would be valid. *People v. Greco*, 204 Ill. 2d 400, 407 (2003). The constitutionality of a statute is a question of law that we review *de novo*. *People v. Fisher*, 184 Ill. 2d 441, 448 (1998).

¶ 13        It is unconstitutional to impose criminal liability based on status alone. *Robinson v. California*, 370 U.S. 660, 662-63 (1962). In *Robinson*, the Court invalidated a California statute that made "the 'status' of narcotic addiction a criminal offense, for which the offender may be prosecuted 'at any time before he reforms.' " *Id*. at 666. The Court found that addiction to narcotics was a "status or condition and not an act" and punishing an individual based on his status alone constituted cruel and unusual punishment in violation of the eighth amendment. *Id.* at 662, 666-67.

¶ 14        Defendant argues that section 24-1.8 impermissibly "exposes a defendant to a greater penalty for the act of possessing a firearm based solely on his status as a gang member." Specifically, that unlawful possession of a firearm by a street gang member is a Class 2 felony with a sentencing range of 3 to 10 years (720 ILCS 5/24-1.8(b) (West 2014)) whereas "the same conduct by a non-gang member" for aggravated unlawful use of a weapon (AUUW) is a Class 4 felony with a sentencing range of one to three years and with the possibility of probation. *Id*. § 24-1.6(d)(1); 730 ILCS 5/5-4.5-45 (West 2014).

¶ 15        Unlike the statute in *Robinson* (see *Robinson*, 370 U.S. at 666 (noting that the "statute *** is not one which punishes a person for the use of narcotics, for their purchase, sale or possession")), the plain language of section 24-1.8 punishes *conduct*. Section 24-1.8 provides that it is a Class 2 felony for any person that knowingly "*possesses* *** a firearm and firearm

ammunition while on any street, road, alley, gangway, sidewalk, or any other lands \*\*\* *and* has not been issued a currently valid Firearm Owner's Identification Card *and* is a member of a street gang." (Emphases added.) 720 ILCS 5/24-1.8(a)(1), (b) (West 2014). A "streetgang" is defined in section 10 of the Illinois Streetgang Terrorism Omnibus Prevention Act (Act) as "any combination \*\*\* of 3 or more persons with an established hierarchy that, through its membership or through the agency of any member *engages in a* course *or pattern of criminal activity*." (Emphasis added.) 740 ILCS 147/10 (West 2014).

¶ 16    "Course or pattern of criminal activity" is defined as (1) two or more "*gang-related criminal offenses*" committed in whole or in part within this State; (2) where at least one such offense was committed after the effective date of this Act (January 1, 1993); (3) both offenses were committed within five years of each other; and (4) at least one offense involved the solicitation to commit, conspiracy to commit, attempt to commit, or commission of any offense defined as a felony or forcible felony under the Criminal Code of 1961 or the Criminal Code of 2012. (Emphasis added.) *Id.*

¶ 17    On its face, section 24-1.8 criminalizes specific conduct: the state must prove (1) possession of a firearm, (2) by an individual without a valid FOID card who (3) is a member of a "streetgang" as defined by the Act. In *People v. Murray*, 2017 IL App (2d) 150599, ¶ 88, *rev'd on other grounds*, 2019 IL 123289, the Second District refused to find section 24-1.8(a)(1) unconstitutional under the eighth amendment because the law "punishes an illicit act—the possession of a firearm without a FOID card. Possession is an act, not a status or condition." The court distinguished from *Robinson* because it "[was] concerned with [a] recognized disease[ ], not voluntary criminal associations." *Id.* We find *Murray* persuasive and agree that section 24-1.8 criminalizes conduct rather than gang member status, as evidenced by the statute itself.

¶ 18    Likewise, in *Powell v. Texas*, 392 U.S. 514, 517 (1968), the Court refused to extend *Robinson* to vacate a defendant's conviction under a law that imposed a fine on anyone that "get[s] drunk or [is] found in a state of intoxication in any public place." The Court found that the law punished the defendant's conduct—the act of being drunk in public—rather than his status as an alcoholic. *Id.* at 531-32. Just as in *Powell*, the statute here constitutionally punishes the *voluntary conduct* of illegal weapon possession rather than mere gang membership. See *People v. Nettles*, 34 Ill. 2d 52, 56 (1966) (holding that a statute criminalizing possession of narcotics was constitutional under the eighth amendment when applied to a known narcotics addict and distinguishing from *Robinson* because that statute "involved no voluntary act"); *People v. Luckey*, 90 Ill. App. 2d 325, 331-32 (1967) (upholding the constitutionality of a narcotics possession statute because "[p]ossession of narcotics is an act and not a status or condition and its punishment is not unconstitutional").

¶ 19    Defendant, relying on *City of Chicago v. Youkhana*, 277 Ill. App. 3d 101, 113 (1995), alleges that the "only distinction between the offense of unlawful possession of a firearm by a street gang member *** and AUUW *** is the defendant's status as a gang member" and therefore the law is "triggered only by a person's status as a gang member." We disagree. In *Youkhana*, the court struck a "Chicago ordinance [that] prohibit[ed] gang members from loitering because they [were] gang members, not because they [were] loitering. Nongang members and those not associating with gang members [were] not prohibited from loitering." *Id.* The court held that the ordinance violated the eighth amendment because it was *triggered* by one's status as a gang member.

¶ 20    Unlike the ordinance in *Youkhana*, section 24-1.8 is not triggered by gang membership. Defendant's argument ignores the State's burden of proving each element of the crime, as

defined by the Act: unlawful possession of a firearm by a member of a "streetgang" that is engaged in a "course or pattern of criminal activity," meaning two or more "gang-related criminal offenses." Therefore, not any gang member can be prosecuted under section 24-1.8. Rather, only members of a gang that are involved in specific criminal conduct defined by the Act that unlawfully possess a firearm. Section 24-1.8 is therefore concerned with "voluntary criminal associations" rather than any "status or condition." See *Murray*, 2017 IL App (2d) 150599, ¶ 88.

¶ 21        While defendant argues that section 24-1.8 "lack[s] any connection between the criminal conduct and gang status," the very definition of "streetgang" requires that the State prove the gang was engaged in a "course or pattern of criminal activity." 740 ILCS 147/10 (West 2014). A "course or pattern of criminal activity," by definition, involves two or more "gang-related criminal offenses." *Id.* "Gang-related" means

> "any criminal activity directed by any gang leader or authority with the intent to
> (1) increase the gang's size, membership, prestige, dominance, or control in any
> geographical area or (2) provide the gang with any advantage in a criminal market sector
> or (3) exact revenge or retribution for the gang or (4) obstruct justice or (5) benefit the
> gang." *People v. Murray*, 2019 IL 123289, ¶ 48 (citing 740 ILCS 147/10 (West 2012)).

The state must prove substantially more than mere gang member status; it must prove specific criminal offenses directly related to or in furtherance of the gang's objectives and, therefore, an explicit nexus is required between illegal firearm possession and gang-related activity.

¶ 22        Finally, defendant has not established that there are "no set of circumstances" under which section 24-1.8 is valid. While we do not focus on the facts of the case at hand (*People v. Rizzo*, 2016 IL 118599, ¶ 24 (explaining that in a facial challenge, "the specific facts related to the challenging party are irrelevant" (internal quotation marks omitted)), we do note that under

circumstances where there is gang activity directly related to the illegal possession of a firearm, the statute is constitutional. Defendant's facial challenge must fail because there are situations in which section 24-1.8 could be constitutionally applied. *Davis*, 2014 IL 115595, ¶ 25 ("a facial challenge must fail if any situation exists where the statute could be validly applied").

¶ 23                      Defendant's Substantive Due Process Challenge

¶ 24       Defendant failed to raise a substantive due process challenge in his opening brief. This claim was first raised in his supplemental brief and again in his motion to cite additional authority, filed after oral argument.

¶ 25       As our supreme court recognized over a century ago: "Under the rules of this court and its long-settled practice, questions not raised by appellants in the original brief cannot be raised in the reply brief. A contrary practice would permit appellants to argue questions in their reply briefs as to which counsel for appellees would have no opportunity to reply." *Holliday v. Shepherd*, 269 Ill. 429, 436 (1915). Similarly, a supplemental brief is not the place to raise, for the first time, a substantive due process challenge.

¶ 26       Arguments not raised in an opening brief are "forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Additionally, "Illinois law is well settled that other than for assessing subject matter jurisdiction, 'a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment.' " (Emphasis in original.) *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978)).

¶ 27       A reviewing court does not lack authority to address unbriefed issues and may do so in the appropriate case, *i.e.*, when a clear and obvious error exists in the trial court proceedings. *Givens*, 237 Ill. 2d at 325. However, we do not consider defendant's untimely substantive due

process claim to be an "appropriate case." Compare *People v. Hunt*, 234 Ill. 2d 49, 61 (2009) (finding no clear or obvious error justifying the need to rule on an issue *sua sponte* where the appellate court "raised statutory construction and fourth amendment issues not argued or briefed by either party"), with *People v. Hobson*, 2014 IL App (1st) 110585, ¶ 21 (finding that "trial counsel['s] [failure] to object to the substantive use of damaging out-of-court statements" constituted clear error and "[the court] did not overstep the proper bounds of an appellate court when, upon discovering that the trial counsel committed an obvious error, [it] asked the parties to brief the issue").

¶ 28    "While a reviewing court has the power to raise unbriefed issues *** [it] must refrain from doing so when it would have the effect of transforming this court's role from that of jurist to advocate." *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002). Based on "the principle of party presentation *** we rely on the parties to frame the issues for decision" and are cognizant of our "role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008).[4] Based on these well-established principles, we find that defendant's substantive due process claim was not properly raised on appeal. Accordingly, we decline to consider that claim.

---

[4] "The purpose of allowing parties to cite additional authority is to bring this court's attention to relevant or dispositive case law that was decided after the parties' briefs were filed." *People v. Molina*, 379 Ill. App. 3d 91, 99 (2008). In his motion, defendant relies on multiple cases (all decided prior to the submission of briefs and oral argument) to support his claim that his substantive due process challenge is properly before this court. Defendant's motion far exceeded the proper purpose of a motion to cite additional authority, as he argued a new substantive issue not raised in his opening brief and relied on cases available to him prior to both the filing of his brief and oral argument. See *id.* at 99-100 ("[W]e certainly do not appreciate the State's attempt here to 'sneak in' a new argument obviously initially overlooked based on a case that was clearly available at the time its briefs were filed. Consequently, any and all arguments raised in the State's motion to cite additional authority will be disregarded.").

¶ 29                                              CONCLUSION

¶ 30            For the foregoing reasons, we hold that section 24-1.8 is constitutional under the eighth

amendment because it does not enhance criminal liability based on mere gang member status.

We therefore affirm defendant's conviction and sentence.

¶ 31            Affirmed.

¶ 32            PRESIDING JUSTICE WALKER, dissenting:

¶ 33            I respectfully dissent because the application of the penalty was triggered by Villareal's

status as one who belonged to a group that met the statutory definition of a street gang. The

penalty is that Villareal was sentenced more harshly than one who does not belong to a group

meeting the statutory definition of a street gang. The majority acknowledges that the State

proved a Class 4 felony—possession of a firearm without a valid FOID—and had the conviction

elevated to a Class 2 felony because Villareal belonged to a group that met the statutory

definition of a street gang. Compare 720 ILCS 5/24-1.6(a)(1), (a)(3)(C), (d) (West 2014), with

720 ILCS 5/24-1.8(a)(2), (b) (West 2014). The majority then reaches the indefensible conclusion

that the statute "does not enhance criminal liability based on mere gang member status." *Supra*

¶ 30.

¶ 34            The issue here is proof that the group qualifies as a street gang does not entail proof that

an individual knew of the group's criminal activities. In addition, proof that the group qualifies

as a street gang does not entail proof connecting the possession of the firearm to any of the

criminal acts that qualify the group for street gang status.

¶ 35            The majority does not attempt to distinguish the statute here from the statutes found

unconstitutional in *State v. O.C.*, 748 So. 2d 945 (Fla. 1999), and *State v. Bonds*, 502 S.W.3d

118, 154 (Tenn. Crim. App. 2016). Because I find the reasoning of *O.C.* and *Bonds* persuasive, I would find section 24-1.8 unconstitutional.

¶ 36    The Florida legislature enacted a statute enhancing the punishments for defendants who belong to gangs if the defendants have committed any of a wide variety of offenses. See *O.C.*, 748 So. 2d 945. The Florida Supreme Court held:

> "[The statute] violates a defendant's substantive due process rights because the statute subjects the defendant to conviction for a higher degree crime than originally charged, resulting in an increased penalty range, based only upon a defendant's 'simple association' with others, who may or may not be criminals. \*\*\*
>
> > The statute does not require any relationship between the criminal act, here attempted aggravated battery, and gang membership. Under the statute, the defendant's punishment is enhanced for the substantive offense plus gang membership *without the need for any nexus between the particular criminal act and such membership.*
> >
> > …
> >
> > …[Thus,] [t]his enhancement statute increases criminal penalties based on non-criminal acts. In effect, the increased punishment is based on association with other people, who may or may not have committed unrelated criminal acts." (Emphasis in original and internal quotation marks omitted.) *O.C.*, 748 So. 2d at 949.

¶ 37    The Tennessee legislature adopted a statute enhancing punishments "when a criminal gang member injures or kills someone, or threatens to do so, while committing a crime." *Bonds*,

502 S.W.3d at 154. The Tennessee Court of Criminal Appeals in *Bonds* adopted the reasoning of *O.C.* and held the statute unconstitutional. The *Bonds* court further noted the applicability of *Scales v. United States*, 367 U.S. 203, 224-28 (1961), where the United States Supreme Court said:

> "In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity *** that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause ***. ***
>
> * * *
>
> *** It must indeed be recognized that a person who merely becomes a member of an illegal organization, by that 'act' alone need be doing nothing more than signifying his assent to its purposes and activities on one hand, and providing, on the other, only the sort of moral encouragement which comes from the knowledge that others believe in what the organization is doing. *** A member, as distinguished from a conspirator, may indicate his approval of a criminal enterprise by the very fact of his membership without thereby necessarily committing himself to further it by any act or course of conduct whatever."

¶ 38          The *Bonds* court found:

> "[The Tennessee statute] runs afoul of the bounds of due process delineated in *Scales* because it imposes mandatory criminal punishment based on the criminal conduct of others. Without a nexus requirement that the underlying offense be gang-related, [the statute] is untethered to any personal criminal intent or conduct

by the defendant. \*\*\* [The statute] imposes mandatory punishment on an eligible defendant by imputing to him responsibility for the criminal activity of the gang as a collective without requiring the defendant's knowledge of and intent to promote such activity." *Bonds*, 502 S.W.3d at 158.

¶ 39    The State contends that the reasoning of *O.C.* and *Bonds* does not apply to section 24-1.8. The State relies on two distinctions: (1) section 24-1.8 applies only to gun possession offenses and not to the broader groups of offenses subjected to enhanced penalties under the Florida and Tennessee statutes and (2) section 24-1.8 restates the prohibited actions in the section, without relying on the description of prohibited acts in section 24-1(a)(4) and section 24-1.6. Under the State's analysis, the Tennessee and Florida enhancements would have comported with the constitution if the legislatures had added separate new crimes of armed robbery by a gang member, aggravated battery by a gang member, attempted murder by a gang member, and so forth, restating the elements of armed robbery, aggravated battery, and attempted murder (and so forth) and adding the element of gang membership. The legislatures could then subject the newly defined crimes to much harsher penalties than simple armed robbery, simple aggravated battery, and simple attempted murder.

¶ 40    The State's contention is incorrect because the reasoning of *O.C.* and *Bonds* would bar as unconstitutional offenses of armed robbery by a gang member, aggravated battery by a gang member, and attempted murder by a gang member, unless the statutes required a nexus between the armed robbery, the aggravated battery, the attempted murder—and gang membership. Without proof that the armed robbery, aggravated battery, or attempted murder involved gang activity, the new crimes would enhance sentences and thereby penalize offenders for the status of gang membership.

¶ 41        As the *Bonds* court pointed out, a person may join a group and subject themselves to far greater penalties without even recognizing that members of the group have committed criminal acts and without realizing that the group counts as a criminal gang.

¶ 42        The State contends that section 24-1.8 cannot apply in absurd scenarios like those described in *Bonds*. Consider a new police officer assigned to the Narcotics Division under the command of James O'Grady in 2014 as described in *Spalding v. City of Chicago*, 24 F. Supp. 3d 765 (N.D. Ill. 2014). Sergeant Ronald Watts and officers under his direction committed many felonies that made his unit with the Chicago Police Department meet the statutory definition of a street gang. See *Spalding*, 24 F. Supp. 3d at 770; 740 ILCS 147/10 (West 2014). Two officers in the Narcotics Division helped the Federal Bureau of Investigation secure evidence of the crimes Watts and his gang committed. Later the officers sued the City, becoming plaintiffs in *Spalding*. According to the *Spalding* court:

> "On one or more occasions, several of the individual defendants [officers in the Narcotics Division] met to discuss how they would 'handl[e] or treat[ ]' Plaintiffs. [Citation.] During one meeting, O'Grady referred to Plaintiffs as 'rats,' stated that he did not want them in his unit, and added words to the effect of, 'God help them if they ever need help on the street, it ain't coming.' [Citation.] Defendant Nicholas Roti, the head of the Bureau of Organized Crime, which includes the Narcotics Division, was present at this meeting, concurred with O'Grady, encouraged retaliation against Plaintiffs, and would not allow Plaintiffs to work in any unit in his bureau. [Citation.] Plaintiffs were informed that none of the 'bosses' wanted them in their units and that their 'careers are over.' " *Spalding*, 24 F. Supp. 3d at 771.

¶ 43    If O'Grady acted in the manner described in *Spalding*, O'Grady apparently committed the offenses of obstructing justice to further gang activity, a Class 3 felony (720 5/31-4(b)(2) (West 2014)), and the felony of violating the Illinois Street Gang and Racketeer Influenced and Corrupt Organizations Law (720 ILCS 5/33G-3(e)(1), (e)(3), (f); 33G-4(a); 33G-5 (West 2014)). A new officer assigned to work under O'Grady would "actually and in fact belong[ ] to a gang." See 740 ILCS 147/10 (West 2014). If the new officer allowed his FOID card to expire and carried a personal gun outside of his home, he would commit a Class A misdemeanor by violating section 24-1(a)(4) of the Code. 720 ILCS 5/24-1(a)(10), (b) (West 2014). Because of his membership in the Narcotics Division, he would apparently also violate section 24-1.8(a) (1) of the Code, making him guilty of a Class 2 felony, even if he did not know when he joined the Narcotics Division that it operated as a street gang. 720 ILCS 5/24-1.8(a)(1), (b) (West 2014) Section 24-1.8 unconstitutionally enhances penalties based on associating with criminals, even when the defendant had no reason to know he had joined a group that included criminals.

¶ 44    The persuasive reasoning of *O.C.* and *Bonds* fully applies to section 24-1.8, which serves to enhance the penalties for gun possession based solely on the possessor's association with others whose activities make the group meet the statutory definition of a street gang. Because section 24-1.8 is facially unconstitutional, I would vacate the conviction for violation of section 24-1.8 and remand for sentencing under section 24-1. See *People v. Buffer*, 2019 IL 122327, ¶ 47. Hence, I respectfully dissent from the majority's opinion.

¶ 45    Finally, appellate justices expect the same measure of decorum in remote hearings as in courtroom proceedings. During the appellant's argument, Assistant State's Attorney (ASA) gesticulated by shaking his head from side to side and moving his hands. When he was admonished to control his reactions, the ASA stated: "Counsel (referring to attorney for

appellant) is misstating the law." When the presiding justice again admonished the ASA that interrupting the argument is rude, the ASA then interjected: "I just need to make a point. Counsel is misstating the law." This court must discourage such disruptive conduct. Aside from this incident, I have not seen any counsel interrupt an opponent during an oral argument like what occurred in this case. Appellate justices take seriously the duty of counsel not to "engage in conduct intended to disrupt a tribunal." Ill. R. Prof'l Conduct (2010) R. 3.5(d) (eff. Jan. 1, 2010).

**No. 1-18-1817**

| | |
|---|---|
| **Cite as:** | *People v. Villareal*, 2021 IL App (1st) 181817 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 11-CR-18625, 12-CR-13785; the Hon. Angela M. Petrone, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Deepa Punjabi, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Jon Walters, Assistant State's Attorneys, of counsel), for the People. |